The Acorn Refining Company, Petitioner, *v*. Commissioner of Internal Revenue, Respondent.

Docket No. 74959. Promulgated May 12, 1936.

*Carmi A. Thompson, Esq., Orville Smith, Esq.*, and *A. W. Jappe, Esq.*, for the petitioner.

*P. A. Bayer, Esq.*, for the respondent.

OPINION.

MELLOTT: The petitioner contests a deficiency in income tax determined by the respondent for the fiscal year ended January 31, 1931, in the amount of $7,809.93. The petitioner alleges that respondent erred (1) in disallowing as a deduction in computing the consolidated net income of an affiliated group the statutory net losses reported by its subsidiary, the Madison Paint Co., for the fiscal years ended January 31, 1929, and January 31, 1930, aggregating $69,760.97; and (2) in determining that the total cost or aggregate basis of the stock of the Madison Paint Co., owned by members of the affiliated group was not in excess of $8,308.30.

The petitioner is an Ohio corporation, engaged in the manufacture of paints. Its principal office is located in Cleveland, Ohio, and it is affiliated with the following subsidiary companies:

The Electric Paint & Varnish Co.
The Progress Paint Co.
The American Asbestos Products Co.
The Madison Paint Co.
The Surety Products Co.
The Franklin Paint Co.
The Fulton Paint Co.
The Adams Paint Co.

For the fiscal year ended January 31, 1931, the affiliated group filed a consolidated return.

The Madison Paint Co. was organized in the year 1921 by Samuel S. Sanders and E. N. Katz. These two individuals also organized the other seven companies listed in the preceding paragraph. Prior to October 1929, the capital stock of the eight companies was owned by Sanders and Katz. They then organized a new corporation known as the Essenkay Corporation to which they transferred all of the stock of the eight corporations in exchange for all of the stock of the Essenkay Corporation.

On October 30, 1929, petitioner acquired all of the capital stock of the eight corporations from the Essenkay Corporation in exchange for the stock of a certain real estate holding company. Sanders and Katz each owned one-half of the capital stock of petitioner.

The Madison Paint Co. was one of petitioner's sales agencies and handled nothing but its products. Its place of business is located at the plant of petitioner, and the advertising of its products was handled by petitioner. One of the methods used was to acquire lists of people looking for positions as sales agents and to mail letters to them. Those employed were furnished with sample outfits by petitioner. Petitioner paid all of the expenses of this advertising, but would then charge a portion of the amount expended to the Madison Paint Co., and such charges would be entered on the books

of petitioner as an account receivable from the Madison Paint Co. The latter company would set up these charges as an account payable to petitioner, and on October 31, 1929, it was indebted to petitioner in the amount of $78,817.46. In 1934 the deficit of the Madison Paint Co. amounted to over $73,000.

In August 1934, petitioner canceled the account receivable due it by the Madison Paint Co. in the amount of approximately $80,000 and this amount was treated as a contribution to the capital of the Madison Paint Co. by petitioner.

The Madison Paint Co. filed a separate income tax return for the fiscal year ended January 31, 1929, on which it reported a net loss of $21,452.19. In arriving at the amount of this loss there had been deducted as an expense approximately $25,000, representing the amount of advertising charged to this company by petitioner.

The Madison Paint Co. filed a separate income tax return for the fiscal year ended January 31, 1930, on which it reported a net loss of $48,212.35. In arriving at the amount of this loss there had been deducted as an expense approximately $90,000, representing the amount of advertising charged to this company by petitioner.

The Madison Paint Co. sustained a net loss in the amount of $31,943 for the fiscal year ended January 31, 1931.

On the date the stock of the eight companies listed above was acquired by petitioner, the net worth of these companies as shown by their books was as follows:

| Company | Capital stock | Surplus | Total net worth |
| --- | --- | --- | --- |
| Electric Paint & Varnish Co | $25,000.00 | $88,993.31 | $113,993.31 |
| Progress Paint Co | 25,000.00 | 66,470.62 | 91,470.62 |
| American Asbestos Products Co | 25,000.00 | 37,144.78 | 62,144.78 |
| Madison Paint Co | 10,000.00 | (−62,081.61) | (−52,081.61) |
| Surety Products Co | 5,000.00 | 3,793.74 | 8,793.74 |
| Franklin Paint Co | 100,000.00 | 150,391.02 | 250,391.02 |
| Fulton Paint Co | 50,000.00 | 85,499.80 | 135,499.80 |
| Adams Paint Co | 10,000.00 | 21,332.60 | 31,332.60 |
| Total | 250,000.00 | 391,544.26 | 641,544.26 |

In the consolidated return filed by the affiliated group for the fiscal year ended January 31, 1931, petitioner claimed as a deduction in computing the consolidated net income the net losses of $21,452.19 and $48,212.35 reported by the Madison Paint Co. in its returns for the fiscal years ended January 31, 1929, and 1930, respectively.

Respondent disallowed the claimed deduction and determined that the net loss that could be deducted in computing the consolidated net income for the taxable year was not in excess of $8,308.30, which he determined to be the total cost or aggregate basis of the stock of the Madison Paint Co. owned by members of the affiliated group.

The pertinent provisions of the Revenue Act of 1928 are the following:

SEC. 141. (a) *Privilege to file consolidated returns.*—An affiliated group of corporations, shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year, in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) prescribed, prior to the making of such return; and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

(b) *Regulations.*—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.

In accordance with the authorization conferred upon him by section 141 (b), *supra*, the respondent, with the consent of the Secretary of the Treasury, promulgated Regulations 75, article 41 (c) of which reads as follows:

(c) *Net Loss Sustained by Separate Corporation Prior to Consolidated Return Period.*

A net loss sustained by a corporation prior to the date upon which its income is included in the consolidated return of an affiliated group (including any net loss sustained prior to the taxable year 1929) shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated income were the income of such corporation; but in no case in which the affiliated status is created after January 1, 1929, will any such net loss be allowed as a deduction in excess of the cost or the aggregate basis of the stock of such corporation owned by the members of the group.

Petitioner and its subsidiaries filed a consolidated return for the fiscal year ended January 31, 1931. The filing of this consolidated return constituted an acceptance by them of the regulations prescribed by the respondent. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62. Although petitioner in its brief questions the authority of the Commissioner to promulgate article 41 (c), Regulations 75, *supra*, it does not attempt to show in what particular the Commissioner exceeded the authority conferred upon him. That Congress intended to authorize the Commissioner to place a limitation upon the deduction in computing consolidated net income of net losses sustained by a corporation prior to affiliation is apparent from the following statement contained in the report of the Committee on Finance (Senate

Report No. 960, 70th Cong., 1st sess., p. 15) accompanying the Revenue Act of 1928:

Among the Regulations of which it is expected that the Commissioner will prescribe was:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(3) The extent to which and the manner in which net losses sustained by the corporation before it became a member of the group shall be deducted in the consolidated return; \* \* \*

The obvious purpose of limiting the amount of the net loss which may be carried forward to an amount not in excess of the cost or basis of the stock of the corporation sustaining it is to "make it profitless \* \* \* to purchase stock for the purpose of the benefit of deductions in excess of what is paid." *Woolford Realty Co.* v. *Rose*, 286 U. S. 319. Petitioner refers to this limitation as being "drastic", but we are not of that opinion. Under the provisions of the revenue acts applicable to the years prior to 1929, the net loss sustained by a corporation in one year could not be carried forward to a subsequent year and deducted in computing the consolidated net income of an affiliated group, this privilege being restricted to the corporation which sustained the loss. *Woolford Realty Co.* v. *Rose*, *supra*. However, under the regulation before us, the affiliated group of corporations is permitted to deduct, in computing consolidated net income for 1929 and subsequent years, part of the net loss sustained in a prior year by a corporation which was not then a member of the group.

It is our conclusion from the foregoing that article 41 (*c*), *supra*, is a valid exercise of the authorization conferred upon the Commissioner by the provisions of section 141 (b), *supra*, and that the amount of any net loss of the Madison Paint Co. deductible in computing the consolidated net income of petitioner and its subsidiaries for the taxable year is limited to the cost or aggregate basis of the stock of the Madison Paint Co. owned by petitioner.

The capital stock of the Madison Paint Co. and of the seven other subsidiary companies was acquired by petitioner for a consideration consisting of the stock of a real estate holding company. The Commissioner determined that the value of the stock of this holding company was $533,027.03. The net worth of the subsidiary corporations at the time petitioner acquired their stock was $641,544.26. Although the Madison Paint Co. had a deficit of $52,081.61 at that time the respondent attributed some cost to its stock and arrived at this cost by taking the capital stock of the Madison Paint Co., namely, $10,000, and taking $\dfrac{\$10,000.00}{641,544.26}$ of $533,027.23, which produced a figure of $8,308.30, the amount respondent determined to be the cost of the Madison Paint Co. stock to petitioner.

Petitioner contends that the basis of the stock of the Madison Paint Co. to petitioner included the advances made to petitioner by it and that these advances exceeded the amount of the claimed losses. With this contention we do not agree. By advances petitioner undoubtedly means the amounts charged to the Madison Paint Co. for advertising. Petitioner treated these amounts on its books as accounts receivable and the Madison Paint Co. treated them as accounts payable. There is no indication in the record that at the time petitioner acquired the stock of the Madison Paint Co. on October 30, 1929, it intended to treat advances as part of the cost of the stock of the Madison Paint Co., and the evidence clearly shows that these advances or loans were not canceled until October 30, 1934. They were not, in our opinion, a part of the cost or aggregate basis of the stock of the Madison Paint Co., at the time it was acquired by petitioner.

The Commissioner determined that the cost of the stock of the Madison Paint Co. to petitioner at the time it was acquired in 1929 was not in excess of $8,308.30. In view of the fact that this subsidiary had a deficit of $52,081.61 at that time, we believe that the cost determined by the Commissioner was fair and reasonable. The burden was on the petitioner to overcome the prima facie correctness of the respondent's determination by competent evidence. It has not sustained this burden. We hold that the net loss of the Madison Paint Co. which may be allowed as a deduction in computing the consolidated net income of the affiliated group for the year ended January 31, 1931, is $8,308.30.

*Judgment will be entered for the respondent.*