HUGHES TOOL COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90002. Promulgated November 28, 1939.

*J. L. Lockett, Esq.*, for the petitioner.
*R. P. Hertzog, Esq.*, for the respondent.

964

OPINION.

ARNOLD: Petitioner contends that it is entitled to carry forward as a deduction from 1930 consolidated income the net loss of $728,415.87 sustained by the Caddo Co., from January 1 to December 12, 1929, a period prior to affiliation, without adjustment for taxable income of $141,828.10 realized by the affiliated group from December 13 to December 31, 1929, for which period a consolidated return was filed. It further contends that the cost or aggregate basis of its Caddo stock was increased $2,579,881.94 by a contribution to capital of the Caddo Co. made under the following circumstances: Said amount was received by petitioner as part of a $3,000,000 dividend declared December 12, payable December 20, 1929, by the Hughes Tool Co. then a wholly owned subsidiary of petitioner, in the form of a claim of said Hughes Tool Co. against the Caddo Co., transfer of the claim to petitioner being reflected by entry on petitioner's books December 31, 1929, and on the books of the Hughes Tool Co. January 2, 1930, which amount was charged by petitioner to "capital stock of subsidiaries", and credited to the account of the Caddo Co. by entry on petitioner's books on April 30, 1930, and forgiven, remitted, and canceled by resolution of petitioner's board of directors on July 7, 1930.

Respondent contends that the cost or aggregate basis of the Caddo Co. stock is $5,000 and can not be increased by the remission or can-

cellation of the claim against the Caddo Co., as a contribution to capital stock of the Caddo Co.; that article 41 (c) of Regulations 75 limits the allowable deduction to the cost or aggregate basis of the Caddo stock in the hands of petitioner and, since the consolidated net income for that portion of 1929 covered by the consolidated return was in excess of $5,000, there is no statutory net loss carry-over deductible from 1930 consolidated income. Petitioner assails Commissioner's construction and the validity of the regulation and contends that the regulation exceeds the authority conferred on the Commissioner by section 141 (b) of the Revenue Act of 1928.

Section 117 (a) of the Revenue Act of 1928 defines net loss as the excess of the deductions allowed by this title over the gross income, with certain exceptions not here material.

Section 117 (b) provides that, if for any taxable year it appears upon the production of evidence satisfactory to the Commissioner that a taxpayer has sustained a net loss, the amount thereof shall be allowed as a deduction in computing the net income of the taxpayer for the succeeding taxable year and, if such net loss is in excess of such net income, the excess shall be allowed as a deduction in computing the net income for the next succeeding taxable year under regulations prescribed by the Commissioner.

Section 141 (a) of the same act gives affiliated corporations the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year in lieu of separate returns. Such privilege is upon the condition that all corporations which have been members of the affiliated group at any time during the taxable year for which the return is made shall consent to all the regulations under subsection (b) prescribed prior to the making of such return, and the making of a consolidated return shall be considered as such consent. In the case of a corporation which is a member of the affiliated group for a fractional part of the year the consolidated return shall include the income of such corporation for such part of the year as it is a member of the affiliated group.

Section 141 (b) of the act empowers the Commissioner, with the approval of the Secretary, to prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.

Section 141 (c) provides that where a consolidated return is made the tax shall be determined, computed, assessed, collected, and adjusted in accordance with the regulations under subsection (b) prescribed prior to the date on which such return is made.

Pursuant to section 141 (b) the respondent, with the approval of the Secretary, promulgated article 41 (c) of Regulations 75, which was in effect prior to the time the consolidated return covering the latter part of 1929 was filed. The regulation is as follows:

(c) *Net Loss Sustained by Separate Corporation Prior to Consolidated Return Period.*

A net loss sustained by a corporation prior to the date upon which its income is included in the consolidated return of an affiliated group (including any net loss sustained prior to the taxable year 1929) shall be allowed as a deduction in computing the consolidated net income of such group in the same manner, to the same extent, and upon the same conditions as if the consolidated net income were the income of such corporation; but in no case in which the affiliated status is created after January 1, 1929, will any such net loss be allowed as a deduction in excess of the cost or the aggregate basis of the stock of such corporation owned by the members of the group.

(d) *Taxable Year.*

Any period of less than 12 months for which either a separate return or a consolidated return is filed, under the provisions of article 13, shall be considered as a taxable year.

Under the authority of *Commissioner* v. *General Machinery Corporation*, 95 Fed. (2d) 759; *Helvering* v. *Morgan's, Inc.*, 293 U. S. 121; *Palomas Land & Cattle Co.* v. *Commissioner*, 91 Fed. (2d) 100; and *Lefcourt Realty Corporation*, 31 B. T. A. 978, that portion of the year for which a separate return is made and that portion of the year for which a consolidated return is made are to be considered as one taxable year, notwithstanding article 41 (d) of Regulations 75 to the contrary.

The authorities cited do not sustain petitioner's contention that the entire net loss sustained by Caddo, Inc., for the period in 1929 prior to affiliation should be carried over as a deduction from 1930 consolidated income unaffected by the consolidated income realized during the affiliated period in 1929. Under section 117 (b) the net loss carry-over allowable as a deduction from consolidated income of the succeeding year is the net loss sustained for the taxable year, not for a portion of the taxable year.

Prior to the enactment of the Revenue Act of 1928 a consolidated group had no right to carry over a net loss sustained by one of the affiliates prior to the affiliation as a deduction against income of an affiliated group. That was a privilege first granted by section 141 (a) and it was limited to corporations making consolidated returns for the taxable year 1929 and thereafter.

Petitioner and Caddo could have filed separate returns had they so desired. Petitioner, having elected to file a consolidated return for that portion of 1929 during affiliation and for 1930, consented to the regulations prescribed and was bound thereby. *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62; *Acorn Refining Co.*, 34 B. T. A. 566. By

filing a consolidated return it consented that its income should be computed in the same manner, to the same extent, and upon the same conditions as if its income were the income of the Caddo Co. As the two periods in 1929 constitute one taxable year and under the regulations the consolidated income is to be treated as the income of Caddo, it follows that Caddo's loss of $728,415.87 sustained from January 1 to December 12, 1929, should be reduced by $141,828.10, the amount of taxable income realized during the affiliated period of 1929, making the net loss carry-over to the subsequent year $586,-587.77. Cf. *Northwest Bancorporation* v. *Commissioner*, 93 Fed. (2d) 1011.

In *Acorn Refining Co.*, *supra*, we held article 41 (c) of Regulations 75 a valid exercise of authority conferred upon the Commissioner by section 141 of the Revenue Act of 1928. The particular question before the Board there was the validity of that portion of the regulation which limits the allowable deduction to the cost or aggregate basis of the stock of a subsidiary of the parent where affiliation was effected subsequent to January 1, 1929.

Petitioner says that, while the taxpayer there questioned the authority of the Commissioner to promulgate the regulation, it was not pointed out to the Board in what particular the Commissioner exceeded his authority, and attempts to supply that omission. It is argued that as the limitation in the regulation is applicable only to groups affiliated after January 1, 1929, the regulation is discriminatory in that it does not apply to all corporations and Congress did not indicate an intention to impose a limitation on some and not on all. The purpose of the regulation in limiting the amount of the deduction to the cost or aggregate basis of the stock is to make it profitless to acquire stock or outstanding claims of a distressed, insolvent, or bankrupt corporation and gain the benefit of deductions in excess of what is paid. *Woolford Realty Co.* v. *Rose*, 286 U. S. 319; *Acorn Refining Co.*, *supra*.

The incentive or opportunity to escape tax liability through the acquisition of claims against impaired or bankrupt corporations did not exist where affiliation was effected prior to January 1, 1929, as no right existed prior thereto to carry forward net losses of an affiliate as a deduction from consolidated income in succeeding years. The regulation removes the incentive by limiting the amount of the deduction. It prevents the avoidance of tax liability, which Congress clearly intended when it empowered the Commissioner to prescribe regulations to that effect by section 141 (b). The courts and this Board have condemned attempts to escape tax liability under different circumstances, *Belle G. Loewenberg*, 39 B. T. A. 844, and cases there cited, and this regulation was specifically intended to

prevent tax avoidance in effecting affiliations. We think the reasoning and conclusions of the Board in *Acorn Refining Co.*, *supra*, are a sufficient answer to petitioner's argument and need not here be restated.

We, therefore, hold that article 41 (*c*) of Regulations 75 is a valid exercise of authority conferred upon the Commissioner by section 141 of the Revenue Act of 1928.

Having concluded that the regulation is a valid exercise of authority by the Commissioner, under which whatever deduction petitioner is entitled to shall first be applied against the consolidated income realized in that portion of 1929 for which a consolidated return was filed, it becomes necessary to determine the cost or aggregate basis of petitioner's stock in the Caddo Co. The affiliation of petitioner and the Caddo Co. was effected by the acquisition of all the capital stock of the Caddo Co., consisting of 100 shares. Fifty shares had no cost basis in petitioner's hands, and 50 shares were acquired at a cost of $5,000.

Petitioner's contention that its forgiveness, remission, and cancellation of its claim against the Caddo Co. resulted in an increase in the cost or aggregate basis of its Caddo Co. stock to the extent of the amount of the claim, $2,579,881.94, is without merit. The claim against the Caddo Co. was received as a dividend from its wholly owned subsidiary, the Hughes Tool Co. It does not appear that petitioner paid anything for it nor is there any evidence in the record that the claim had any value either at the time it was received or when it was canceled. It may have been worthless, as the Caddo Co. had net losses in 1929, prior and subsequent to affiliation, of $728,415.87 and $42,365.11, respectively, and a net loss in 1930, according to the deficiency notice, of $1,555,872.40. If the claim was worthless its forgiveness, remission, and cancellation would not in any manner be a contribution to capital nor would it increase the cost or aggregate basis of the Caddo Co. stock in petitioner's hands. In the absence of proof of value of the claim so remitted and charged to capital of the Caddo Co., none can be assigned. Cf. *Edward Mallinckrodt, Jr., et al., Trustees*, 38 B. T. A. 960.

We, therefore, hold that the cost or aggregate basis of petitioner's stock in the Caddo Co. is $5,000 and that amount is deductible from 1930 consolidated income.

Reviewed by the Board.

*Decision will be entered under Rule 50.*