INTER-ISLAND STEAM NAVIGATION COMPANY, LTD., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93405.  Promulgated October 29, 1940.

*Alfred L. Castle, Esq.*, for the petitioner.
*B. H. Neblett, Esq.*, for the respondent.

OPINION.

SMITH: This proceeding involves a deficiency of $19,236.53 in petitioner's income tax for 1932. A number of the issues raised in the pleadings have been waived. It is stipulated that the petitioner is entitled to the deduction of additional territorial income tax for 1932 in the amount of $7,172.09. The only issue for our determination is whether, in computing the amount of the loss which petitioner is entitled to deduct in 1932 on account of the worthlessness of the stock of a subsidiary corporation, the cost basis of such stock should be reduced by the operating losses of the subsidiary for all prior years, to the extent that such losses were taken as a deduction in consolidated returns, or only by the amount of the operating losses of the subsidiary for 1929 and subsequent years.

The parties have submitted a written stipulation of facts which, in so far as it relates to the issue under consideration, is substantially as follows:

The petitioner is a corporation organized and existing under the laws of the Territory of Hawaii and is engaged in a general transportation business and matters incidental thereto, including the operation of a hotel.

Petitioner acquired, by purchases for cash, shares of the capital stock of the Kilauea Volcano House Co., Ltd., as follows:

| Year | Shares | Cash cost | Year | Shares | Cash cost |
|---|---|---|---|---|---|
| 1896 | 240 | $6,000.00 | 1921 | 1,140 | $72,570.00 |
| 1904 | 83 | 120.00 | 1922 | 2,085 | 52,125.25 |
| 1905 | 180 | 3,540.00 | 1923 | 24 | 303.50 |
| 1911 | 5 | 10.00 | 1924 | 41 | 1,010.25 |
| 1912 | 9 | 18.00 | 1929 | 12 | 162.50 |
| | | | 1931 | 1 | 12.50 |
| | 517 | 9,688.00 | | 3,820 | 135,872.00 |

The fair market value on March 1, 1913, of the 517 shares of Kilauea Volcano House Co., Ltd., stock acquired by petitioner prior to said date was $9,688.

The Kilauea Volcano House Co., Ltd., was a domestic corporation organized under the laws of Hawaii on March 18, 1891, to engage in the business of owning and operating a hotel on the brink of the Kilauea Volcano, Island of Hawaii. Its paid-up and outstanding capital stock at all times subsequent to March 1, 1913, was 4,000 shares, each of the par value of $25.

All of the assets of the Kilauea Volcano House Co., Ltd., were sold on December 30, 1932, under writ of execution issued November 12, 1932, for the benefit of its creditors, and its entire outstanding capital stock became worthless during the calendar year 1932.

Petitioner did not receive, nor did the Kilauea Volcano House Co., Ltd., distribute at any time, any cash or other property in liquidation, partial or complete, of the outstanding capital stock of the Kilauea Volcano House Co., Ltd.

Petitioner and the Kilauea Volcano House Co., Ltd., throughout the years 1924 to 1931, inclusive, duly qualified under the provisions of the applicable revenue acts and the regulations promulgated thereunder, as affiliated corporations, and, after due compliance with the provisions of the revenue acts and regulations appertaining thereto, duly filed consolidated Federal income tax returns for the calendar years 1924 to 1931, inclusive.

In said years losses of the Kilauea Volcano House Co., Ltd., were availed of to reduce consolidated net income for the years 1924 to 1931, inclusive, as follows:

| | | | |
|---|---|---|---|
| 1924 | $1,543.07 | 1928 | $6,790.49 |
| 1925 | 43,148.51 | 1930 | 7,125.54 |
| 1926 | 18,957.97 | 1931 | 20,512.03 |
| 1927 | 19,165.06 | | |
| | | | 117,242.67 |

For the calendar year 1932 petitioner and the Kilauea Volcano House Co., Ltd., duly filed separate income tax returns, under the authority of the Revenue Act of 1932 and the regulations authorized by that act and in compliance with the same.

In its individual Federal income tax return for the calendar year 1932 the petitioner claimed a worthless stock loss of $127,218, representing the book value of its investment in 3,820 shares of capital stock of the Kilauea Volcano House Co., Ltd.

In his determination of the deficiency herein the respondent computed the deductible loss on the petitioner's investment in the shares of stock of the Kilauea Volcano House Co., Ltd., as follows:

| | |
|---|---|
| Cost of stock | $135,872.00 |
| Losses of this company while affiliated with your company, availed of to reduce consolidated net income | 117,242.67 |
| Deductible loss | 18,629.33 |

The petitioner contends in this proceeding that under the Revenue Act of 1932 and, particularly, under the provisions of Regulations 78, the cost basis of its subsidiary's stock should be reduced only by the amount of the operating losses of the subsidiary company for 1929 and subsequent years ($27,637.57) and that the deductible loss is $108,234.43, or $89,605.10 more than the respondent has determined.

The applicable provisions of the Revenue Acts of 1926 and 1928, so far as they relate to the filing of consolidated returns, are set up in parallel columns as follows:

*Act of 1926*

CONSOLIDATED RETURNS OF CORPORATIONS.

SEC. 240. (a) Corporations which are affiliated within the meaning of this section may, for any taxable year, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

(No corresponding section).

*Act of 1928*

SEC. 141. CONSOLIDATED RETURNS OF CORPORATIONS—1929 AND SUBSEQUENT TAXABLE YEARS.

(a) *Privilege to file consolidated returns.*—An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year 1929 or any subsequent taxable year, in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. * * *

(b) *Regulations.*—The Commissioner, with the approval of the Secretary, shall prescribe such regulations as he may deem necessary in order that the tax liability of an affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability.

In the Revenue Act of 1932 the comparable part of section 141 (a) reads:

An affiliated group of corporations shall, subject to the provisions of this section, have the privilege of making a consolidated return for the taxable year in lieu of separate returns. The making of a consolidated return shall be upon the condition that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations under subsection (b) (*or, in case such regulations are not prescribed prior to the making of the return, then the regulations prescribed under section 141 (b) of the Revenue Act of 1928 insofar*

*as not inconsistent with this Act*) prescribed prior to the making of such return; and the making of a consolidated return shall be considered as such consent. * * * [Emphasis supplied.]

The petitioner contends that the italicized portion has a very definite bearing upon the question here in issue.

The following provisions of the Revenue Act of 1932 are involved:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

*          *          *          *          *          *          *

(f) LOSSES BY CORPORATIONS.—Subject to the limitations provided in subsection (r) of this section, in the case of a corporation, losses sustained during the taxable year and not compensated for by insurance or otherwise.

(g) BASIS FOR DETERMINING LOSS.—The basis for determining the amount of deduction for losses sustained, to be allowed under subsection * * * (f), shall be the adjusted basis provided in section 113 (b) for determining the gain or loss from the sale or other disposition of property.

*          *          *          *          *          *          *

SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

*          *          *          *          *          *          *

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made.—

(A) for expenditures, receipts, losses, or other items, properly chargeable to capital account, including taxes and other carrying charges on unimproved and unproductive real property, but no such adjustment shall be made for taxes or other carrying charges for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years.

Petitioner's argument that its cost basis for its 3,820 shares of stock of the Kilauea Volcano House Co., Ltd., which became worthless in 1932 should not be reduced by the net losses of that company for the years 1924 to 1928, inclusive, is as follows:

The wording of the report of the Committee on Finance of the Senate which accompanied the Revenue Bill of 1928, which was also contained in the statement of the managers on the part of the House accompanying the conference report on the bill, reads in part:

Among the Regulations which it is expected that the Commissioner will prescribe are (1) *the extent to which gain or loss shall be recognized upon the sale by a member of the affiliated group of stock issued by any other member of the affiliated group*, or upon the dissolution * * * of a member of the group * * *, (3) *and the extent to which and the manner in which net losses sustained during the period for which the consolidated return is filed, shall be deducted* in any taxable year after the affiliation is terminated in whole or in part. [Emphasis supplied.]

Following the enactment of the Revenue Act of 1928 the Commissioner promulgated Regulations 75, specific regulations dealing with consolidated returns, and specifically providing for the very matters referred to in the Congressional report, *supra*. Heretofore regulations dealing with consolidated returns were only parts of general regulations.

The title of the regulations is:

REGULATIONS 75

Relating to

CONSOLIDATED RETURNS OF AFFILIATED CORPORATIONS PRESCRIBED

UNDER SECTION 141 (B) OF THE REVENUE ACT OF 1928

(Applicable to the taxable year 1929 and subsequent taxable years)

Following the quotation of the revenue act appear certain introductory sections as follows:

APPLICATION OF REGULATIONS

(a) *1929 and Subsequent Years.*

These regulations are applicable only to the taxable year 1929 and to subsequent taxable years.

(b) *1928 and Prior Years.*

The regulations applicable to the taxable year 1928 will be found as a part of Regulations 74 (arts. 731 to 735, inclusive), and the regulations applicable to the taxable year 1927 or any prior taxable year will be found in the prior regulations, and the amendments thereto.

\*　　\*　　\*　　\*　　\*　　\*　　\*

AUTHORITY FOR REGULATIONS

The following regulations are hereby prescribed pursuant to the authority of section 141 (b) of the Revenue Act of 1928.

Congress intended to create, and the Revenue Act of 1928 and Regulations 75 did create, a definite break in the method of dealing with affiliated groups and the problems arising thereunder.

Article 34 of Regulations 75 reads in part:

ART. 34. *Sale of Stock—Basis for determining Gain or Loss.*

(a) *Scope of Article.*

This article prescribes the basis for determining the gain or loss upon any sale or other disposition (hereinafter referred to as "sale") by a corporation which is (or has been) a member of an affiliated group which makes (or has made) a consolidated return for the taxable year 1929 or any subsequent taxable year, of any share of stock issued by another member of such group (whether issued before or during the period that it was a member of the group and whether issued before, during, or after the taxable year 1929), and held by the selling corporation during any part of a consolidated return period. (For the basis in the case of sales of bonds, see article 35.) The paragraphs of this article are applicable to sales during different periods of time, as follows:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) *Sales which break Affiliation made while Selling Corporation is Member of Group.*

If the sale is made during a period during which the selling corporation is a member of the affiliated group (whether or not during a consolidated return period, and if, as a result of such sale, the issuing corporation ceases to be a member of the affiliated group, such basis shall be determined as follows:

\* \* \* \* \* \* \*

(2) From the sum of the aggregate bases, as determined in paragraph (1) above, there shall be deducted the aggregate of the losses of such issuing corporation sustained during each of the consolidated return periods (*including only the taxable year 1929 and subsequent taxable years*) after such corporation became a member of the group and prior to the sale of the stock, to the extent that such losses could not have been availed of by such corporation as a net loss in computing its tax for such periods if it had made a separate return for each of such periods. [Emphasis supplied.]

Under the Act of 1932 Regulations 78 were issued, and (c) of article 34 is precisely the same as the same section of Regulations 75, except that in the first sentence, instead of using the words "there shall be deducted the aggregate of the losses", the regulations use the words "there shall be deducted the sum of the losses."

The petitioner then submits:

3. The Law and Regulations Clearly Provide that Petitioner's Loss is the Difference between Cost and Operating Losses in 1929–1931 which were availed of to Reduce Taxable Income in those Years.

\* \* \* \* \* \* \*

Congress in the Revenue Act of 1928 intended to, and did, make a change in dealing with consolidated returns. Section 141 (a) of the Act specifcally provides for the privilege of making consolidated returns "for the taxable year 1929 or any subsequent taxable year." This privilege is, however, "upon the condition" that such corporations "consent to all the regulations under subsection (b) prescribed prior to the making of the return."

Section 141 (b) provides that the Commissioner, with the approval of the Secretary, shall prescribe such regulations. This is specific, more direct and instructive than the mere general power to regulate under Section 62 of the Act.

\* \* \* \* \* \* \*

On passage of the bill, Regulations 75 were promulgated [January 3, 1929]. Such Regulations, as pointed out, clearly specified that such regulations were applicable to calendar years 1929 and subsequent years, and that they were issued under the authority of Section 141 (b) of the Act.

In order that there can be no doubt on the subject, the official regulations incorporate as a footnote to the statement that they were issued under the authority of Section 141 (b), the quoted section of the Congressional report above set forth.

In other words, Congress, in the Revenue Act of 1928, itself definitely directed the Treasury Department to make regulations for consolidated returns for 1929 and all subsequent years, and specifically asked for regulations which would govern "the extent to which gain or loss shall be recognized upon the sale by a member of the affiliated group of stock issued by any other member of the affiliated group" and "the extent to which and the manner in which net losses

sustained during the period for which the consolidated return is filed shall be deducted * * *" etc.

Regulations 75 clearly specified (Art. 34 (c)) that the measure of this loss should be the "aggregate bases" cost, less losses availed of in the consolidated return periods to reduce taxable net income," including *only* the taxable year 1929 and subsequent taxable years.

While conceding that its contention is contrary in principle to a number of cases [1] wherein it has been held that upon a liquidation or sale of a subsidiary company's stock the deductible loss thereon to the parent company must be computed so as not again to allow the deduction of losses of a subsidiary which have been availed of to reduce the consolidated taxable income for prior years, petitioner submits that in none of those cases was there any ruling on or discussion of the effect of the particular provision of the regulations herein relied upon.

Respondent's position is that the purpose of the parenthetical clause of the regulations under consideration is merely to limit the application of the regulations to the year 1929 and subsequent years. Respondent disavows any intention to prescribe in his regulations a different method for treating the operating losses of a subsidiary corporation for 1929 and subsequent years from that accorded such losses for prior years.

In *Jordahl & Co.*, 35 B. T. A. 1136, we said:

* * * It is now well settled that the loss on the sale of the stock or liquidation of a subsidiary company must be reduced by the amount of the subsidiary's operating losses which were availed of to reduce the taxable income of the affiliated group. * * *

*Manchester Savings Bank & Trust Co.*, *supra*, involved the question of the amount of the taxable gain from the liquidation of a subsidiary company in the taxable year 1932. We held that in computing the amount of such gain the cost basis of the subsidiary's stock should be reduced by the losses of the subsidiary company for all of the prior years in which such losses had been availed of in consolidated returns to reduce the parent company's taxable income.

In *American Utilization Co.*, *supra*, a loss was claimed in 1935 on account of the worthlessness of stock of a subsidiary company. The subsidiary company had sustained operating losses for a number of prior years and such losses for the years 1925 and 1933 had been used to reduce the parent company's net income in consolidated returns. We held that in computing the amount of the parent company's loss on its investment in the subsidiary company the cost

---

[1] See *Manchester Savings Bank & Trust Co.*, 34 B. T. A. 1008; *Jordahl & Co.*, 35 B. T. A. 1136; *American Utilization Co.*, 38 B. T. A. 322; *Ilfeld Co.* v. *Hernandez*, 292 U. S. 62; *McLaughlin* v. *Pacific Lumber Co.*, 293 U. S. 351; *Commissioner* v. *National Casket Co.*, 78 Fed. (2d) 940; *Greif Cooperage Corporation* v. *Commissioner*, 85 Fed. (2d) 365.

of such stock should be reduced by all of the subsidiary's operating losses for 1925 and 1933 which had been deducted in the consolidated returns for those years. In that case we said:

Although the cases cited above involved either the sale or liquidation by a parent company of the stock of its subsidiary and did not involve the situation where the stock of the subsidiary became worthless during the taxable year, the controlling principle of law involved is nevertheless the same in the latter situation as in the former. Cf. *H. Liebes & Co.*, 23 B. T. A. 787, 791. In so holding we are not unmindful of our decision in *Manatee Crate Co.*, 22 B. T. A. 996, wherein we allowed the parent company to deduct the full cost of the stock of its subsidiary in 1924, the year in which the stock of the subsidiary became worthless, without making any inquiry into the extent to which the consolidated group had had the benefit of the losses of the subsidiary for the years 1921, 1922, and 1923. Our holding there was, however, promulgated several years before the decisions of the Supreme Court cited above, and must be regarded as in effect modified to conform therewith. Cf. *Prosperity Co.*, 27 B. T. A. 28.

It is true that in the above cited cases we did not consider the bearing of the question upon the selling corporation's cost base of the parenthetical clause "(including only the taxable year 1929 and subsequent taxable years)" contained in article 34 (c) (2) of Regulations 78. Our attention was not directed to the article.

But this can not be said of the opinion of the Supreme Court in *Ilfeld Co.* v. *Hernandez, supra.* The facts in that case, as stated by the Supreme Court, were as follows:

In 1917 petitioner purchased all the capital stock of the Springer Trading Company for $40,000 and in 1920 all that of the Roy Trading Company for $5,000. It held these shares until late in 1929 when both companies were dissolved. In that period it advanced the Springer Company sums amounting to $69,030.27, and the Roy Company $9,782.22. Nothing having been paid it on account of these advances, petitioner had an investment in the former of $109,030.27 and in the latter of $59,782.22. It made consolidated returns which took into account the gains and losses of each subsidiary. Operations of the Springer Company resulted in losses in all but two of the years and those of the Roy Company in all but four. The losses of the former exceeded its gains by $118,510.53, and those of the latter by $57,127.85. In 1929, before the end of November, the subsidiaries sold all their property to outside interests. After paying debts to others, each had a balance—the Springer Company, $22,914.22, and the Roy Company, $15,106.16—which it paid petitioner on December 23. Both subsidiaries were dissolved December 30 in that year.

Petitioner made a consolidated return for 1929 based on the results of operation and the liquidation of each subsidiary but made no deduction of losses resulting to itself from the liquidations. The return showed a tax of $20,836.20 which was duly paid. In May, 1931, petitioner filed an amended return and claimed a refund of $14,406.43. This return does not take into account profits or losses of subsidiaries in that year but deducts the losses above shown to have resulted to petitioner from its investments in them. * * *

The question before the Supreme Court was whether the taxpayer was entitled to deduct from its 1929 income any part of the losses resulting from its investments in the subsidiaries. The Supreme

Court's attention was called to the provisions of Regulations 75, which in all material respects are the same as those contained in Regulations 78. The Supreme Court said:

\* \* \* Petitioner contends that Articles 37 (b) and 34 (c) cover the case. We are unable so to construe them. Article 37 relates to dissolutions. Subdivision (b) deals with distributions made after a consolidated return period. The record conclusively shows that each subsidiary handed over the balance before the dissolution was consummated and during the consolidated return period. Article 34 relates exclusively to the sale of stock. No sale of stock was involved. The parent and subsidiary corporations were the only parties. Neither subsidiary acquired stock of the other or that issued by itself. The petitioner retained all the shares of each and at the end voted dissolutions that operated to cancel them.

The Supreme Court held that the losses resulting from the investment of the Ilfeld Co. in its subsidiaries were not deductible from gross income in consolidated returns on the theory that the obligations of the subsidiary corporations resulted from intercompany transactions during the consolidated return period and because losses of the subsidiary corporations had been previously deducted in consolidated returns of earlier years.

In the quotation from the Supreme Court opinion above set forth it was held that the parent company made no sale of the stock of the subsidiary companies and that article 34 related "exclusively to the sale of stock." The same is true in the instant proceeding. The stock of the subsidiary became worthless in petitioner's hands in 1932. The petitioner made no sale of the stock. It is therefore not within the letter of the regulations.

The respondent further points out in his brief that the petitioner and the Kilauea Volcano House Co., Ltd., did not file a consolidated return for 1932. The petitioner contends that it is immaterial whether it filed a consolidated return or not, since the regulation was intended to cover a case where separate returns were filed if consolidated returns had been filed for prior years. We think, however, that the situation here presented is ruled by the opinion of the Supreme Court in the *Ilfeld Co.* case. In that case the Supreme Court further said:

The allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers. \* \* \* There is nothing in the Act that purports to authorize double deduction of losses or in the regulations to suggest that the commissioner construed any of its provisions to empower him to prescribe a regulation that would permit consolidated returns to be made on the basis now claimed by petitioner.

Without passing upon the question of the validity of the controverted provisions of article 34 (c) (2) of Regulations 78 in a case where the parent corporation sells the shares of stock of an affiliated subsidiary, we are of the opinion that the respondent did not err in the instant proceeding by reducing the petitioner's cost base by losses of the subsidiary for the years 1924 to 1928 which were availed of by it in reducing the tax liability of the affiliated group.

Reviewed by the Board.

*Decision will be entered under Rule 50.*