## CHARLES ILFELD CO. *v.* HERNANDEZ, COLLECTOR OF INTERNAL REVENUE.

No. 579.   Argued March 8, 1934.—Decided April 2, 1934.

*Mr. A. T. Hannett* for petitioner.

*Mr. Erwin N. Griswold,* with whom *Solicitor General Biggs, Assistant Attorney General Wideman,* and *Messrs. Sewall Key* and *Norman D. Keller* were on the brief, for respondent.

By leave of Court, briefs of *amici curiae* were filed as follows: by *Messrs. Robert H. Montgomery, Thomas G. Haight,* and *J. Marvin Haynes* on behalf of the American Tobacco Co.; and by *Messrs. Theodore Benson, Oscar W. Underwood, Jr., H. C. Kilpatrick, John G. Buchanan,* and *Walter C. Mylander,* on behalf of The Apartment Corporation.

MR. JUSTICE BUTLER delivered the opinion of the Court.

In 1917 petitioner purchased all the capital stock of the Springer Trading Company for $40,000 and in 1920 all that of the Roy Trading Company for $50,000. It held these shares until late in 1929 when both companies were dissolved. In that period it advanced the Springer Company sums amounting to $69,030.27, and the Roy Company $9,782.22. Nothing having been paid it on account of these advances, petitioner had an investment in the

former of $109,030.27 and in the latter of $59,782.22. It made consolidated returns which took into account the gains and losses of each subsidiary. Operations of the Springer Company resulted in losses in all but two of the years and those of the Roy Company in all but four. The losses of the former exceeded its gains by $118,510.53, and those of the latter by $57,127.85. In 1929, before the end of November, the subsidiaries sold all their property to outside interests. After paying debts to others, each had a balance—the Springer Company, $22,914.22, and the Roy Company, $15,106.16—which it paid petitioner on December 23. Both subsidiaries were dissolved December 30 in that year.

Petitioner made a consolidated return for 1929 based on the results of operation and the liquidation of each subsidiary but made no deduction of losses resulting to itself from the liquidations. The return showed a tax of $20,836.20 which was duly paid. In May, 1931, petitioner filed an amended return and claimed a refund of $14,406.43. This return does not take into account profits or losses of subsidiaries in that year but deducts the losses above shown to have resulted to petitioner from its investments in them.* The commissioner rejected the claim. Petitioner brought this action in the federal district court for New Mexico against the collector to recover the amount of its claim. A jury was waived, the court made special findings of fact, stated its conclusions of law

---

* Operating losses claimed and deducted prior to 1929...

|  | Springer Co. | Roy Co. | Combined |
|---|---|---|---|
| Operating losses claimed and deducted prior to 1929 | $131,424.41 | $59,007.25 | $190,431.66 |
| Investment loss claimed for 1929 | 86,116.05 | 44,676.06 | 130,792.11 |
| Total losses claimed | 217,540.46 | 103,683.31 | 321,223.77 |
| Investment (stock plus advances) | 109,030.27 | 59,782.22 | 168,812.49 |

and gave petitioner judgment as prayed. The Circuit Court of Appeals reversed. 66 F. (2d) 236. 67 F. (2d) 236.

The question is whether petitioner is entitled to deduct from its 1929 income any part of the losses resulting from its investments in the subsidiaries.

The Revenue Act of 1928 and Regulations 75 made under § 141 (b) govern. Section 141 (a) gives to groups of affiliated corporations the privilege of making consolidated returns, in lieu of separate ones, for 1929 or in subsequent years upon condition that all members consent to the regulations prescribed prior to the return. And, in view of the many difficult problems arising in the administration of earlier provisions authorizing consolidated returns, the Congress deemed it desirable to delegate by § 141 (b) the power " to prescribe regulations legislative in character." Senate Report No. 960, 70th Cong., 1st Sess., p. 15. That subsection authorizes the Commissioner, with the approval of the Secretary, to make such regulations as he may deem necessary in order that the tax liability of an affiliated group and of each member " may be determined, computed, assessed, collected, and adjusted in such manner as clearly to reflect the income and to prevent avoidance of tax liability."

The making of the consolidated return constituted acceptance by petitioner and its subsidiaries of the regulations that had been prescribed. No question as to validity is raised. The brief substance of the regulations here involved follows:

Article 37 (a) provides: Gains or losses shall not be recognized upon a distribution *during* a consolidated return period by one member to another in cancellation or redemption of its stock; " and any such distribution shall be considered an intercompany transaction." And subdivision (b) requires that any such distribution *after* a

consolidated return period shall be treated as a sale, and directs adjustments to be made in accordance with articles 34, 35 and 36.

Article 34 (a) prescribes the basis for determination of gain or loss upon a sale by a member of stock issued by another member and "during any part of the consolidated return period " held by the seller. Subdivision (c) applies to sales which break affiliation and which are made during the period that the selling corporation is a member of the affiliated group.

Article 40 (a) directs that intercompany accounts receivable or other obligations which are the result of intercompany transactions during a consolidated return period shall not " during a consolidated return period " be deducted as bad debts. Subdivision (c) governs deductions after the consolidated return period on account of such transactions during the period.

1. In the absence of a provision in the Act or regulations that fairly may be read to authorize it, the deduction claimed is not allowable. *Brown* v. *Helvering,* 291 U.S. 193, 199, 205. *Burnet* v. *Houston,* 283 U.S. 223, 227. Cf. *Woolford Realty Co.* v. *Rose,* 286 U.S. 319, 326. Petitioner contends that Articles 37 (b) and 34 (c) cover the case. We are unable so to construe them. Article 37 relates to dissolutions. Subdivision (b) deals with distributions made after a consolidated return period. The record conclusively shows that each subsidiary handed over the balance before the dissolution was consummated and during the consolidated return period. Article 34 relates exclusively to the sale of stock. No sale of stock was involved. The parent and subsidiary corporations were the only parties. Neither subsidiary acquired stock of the other or that issued by itself. The petitioner retained all the shares of each and at the end voted dissolutions that operated to cancel them.

2. Respondent, relying on Articles 37 (a) and 40 (a), maintains that the losses petitioner seeks to deduct arose from intercompany transactions during the consolidated return period and therefore may not be allowed.

Article 37 (a) forbids the recognition of losses upon distribution during the consolidated return period and declares that such distributions shall be considered intercompany transactions. Article 40 (a) forbids during that period the deduction as bad debts of obligations which are the result of intercompany transactions. The payment of the liquidating dividends was made during the return period and was the last step leading up to the action of directors and stockholders for the dissolution of the subsidiaries. The amount handed over by the Springer Company was less than petitioner's advances to it, but the amount paid by the Roy Company was greater than the advances to it. Undoubtedly the obligation of the subsidiaries in respect of the advances would be held to be intercompany accounts receivable quite independently of the regulations.

But a word is necessary as to the subsidiaries' obligations to the petitioner as stockholder. The record does not disclose whether the latter obtained the stock directly from the issuing corporations or purchased from others. Without regard to the manner of acquisition, the amount paid constituted investment in the subsidiaries. And, as it was the owner of all the shares of the subsidiaries, petitioner will be deemed to have directed all their activities in the unitary business and as well the steps taken for their liquidation and dissolution. They were liable to it alone for the balances remaining after payment of the amounts owed others, and it was equally entitled whether claiming as lender or shareholder. Under the circumstances, it reasonably may be held that their obligation in respect of petitioner's stock ownership resulted

from intercompany transactions within the meaning of Article 40 (a). Petitioner rightly says, as does respondent, that the amounts paid for the stock and the advances later made to the subsidiaries stand on the same footing. But its contention that the transactions out of which the claimed losses arose did not occur during the consolidated return period cannot be sustained. Petitioner is therefore not entitled to deduct them from its 1929 income.

3. The allowance claimed would permit petitioner twice to use the subsidiaries' losses for the reduction of its taxable income. By means of the consolidated returns in earlier years it was enabled to deduct them. And now it claims for 1929 deductions for diminution of assets resulting from the same losses. If allowed, this would be the practical equivalent of double deduction. In the absence of a provision of the Act definitely requiring it, a purpose so opposed to precedent and equality of treatment of taxpayers will not be attributed to lawmakers. Cf. *Burnet* v. *Aluminum Goods Co.*, 287 U.S. 544, 551. *United States* v. *Ludey*, 274 U.S. 295, 301. There is nothing in the Act that purports to authorize double deduction of losses or in the regulations to suggest that the commissioner construed any of its provisions to empower him to prescribe a regulation that would permit consolidated returns to be made on the basis now claimed by petitioner.

In *Remington Rand, Inc.* v. *Commissioner,* 33 F. (2d) 77, the Circuit Court of Appeals for the Second Circuit held a subsidiary company's accumulated earnings on stock sold to a parent company could not be added to the cost of the stock in determining taxable gain arising on the latter's sale to outsiders. In *United Publishers' Corp.* v. *Anderson,* 42 F. (2d) 781, a district court in the same circuit, deeming the *Remington Rand* case applicable, held that a parent corporation filing consolidated returns showing losses of a subsidiary during earlier years could nevertheless deduct loss on the sale of the subsidiary's stock.

Petitioner insists that same principle governs both decisions and that therefore the deduction should be allowed. But the analogy is not good. Where all the members gain, total taxable income is the same on a consolidated return as upon separate ones. But where as in the case before us the subsidiaries lose and the parent gains, the losses of the former go in reduction of the taxable income of the latter. Considerations that justify inclusion of the profits made by all the members do not support the double deduction claimed.

The weight of authority is against petitioner's contention. *Burnet* v. *Riggs Nat. Bank,* 57 F. (2d) 980. *Commissioner* v. *Apartment Corp.,* 67 F. (2d) 3. *Summerfield Co.* v. *Commissioner,* 29 B.T.A. 77. *National Casket Co.* v. *Commissioner,* 29 B.T.A. 139. No decision other than that of the district court in *United Publishers' Corp.* v. *Anderson, supra,* gives any support to its claim. Cf. *Burnet* v. *Imperial Elevator Co.,* 66 F. (2d) 643. *McLaughlin* v. *Pacific Lumber Co.,* 66 F. (2d) 895.

*Affirmed.*