JOHN WANAMAKER PHILADELPHIA
v. UNITED STATES.
No. 42700.

Court of Claims.
April 7, 1941.

James O. Wynn, of New York City (J. Marvin Haynes and Robert H. Montgomery, both of Washington, D. C., on the brief), for plaintiff and George G. Blattmachr, of New York City.

Daniel F. Hickey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

This suit is based on two claims for refund of corporation income taxes for the fiscal year ended January 31, 1929. The first claim filed September 17, 1931, was for $22,198.02, and arose out of the Commissioner of Internal Revenue's disallowance of a deduction in plaintiff's consolidated corporation income tax return for the fiscal year in question, of a loss by the Record Publishing Company, hereinafter called Record. Defendant concedes that Record had a loss of $133,729.86. Plaintiff claims the loss was $40,981.12 more than that. But the first question to be answered is whether plaintiff was entitled to deduct any loss of Record, regardless of its amount.

During plaintiff's entire fiscal year ending January 31, 1929, plaintiff owned all the stock of several corporations other than Record. Rodman Wanamaker, an individual, or his estate, owned all the stock of plaintiff during the entire year, and from February 1, 1928, to June 30, 1928, owned 96.5% of the outstanding stock of Record. Between February 1 and June 30, 1928, plaintiff owned a varying number of shares of Record stock, 278 at the latter date. On that date all the stock of Record held by Rodman Wanamaker's estate and by plaintiff was sold to outside interests.

The affiliation of plaintiff and Record was, then, the result of the ownership by Rodman Wanamaker, or his estate, of all of the stock of plaintiff and 96.5% of the stock of Record, i.e. the stock of both plaintiff and Record was owned by "the same interests." This has come to be called a class B affiliation. On the other hand, the affiliation between plaintiff and the other corporations whose stock plaintiff owned directly has come to be known as a class A affiliation.

The Revenue Act of 1928, 45 Stat. 791, provided in section 142, 26 U.S.C.A. Int. Rev.Acts, page 398, that corporations affiliated by either class A or class B affiliations could file consolidated returns for the taxable year 1928. In section 141 it provided, for the taxable year 1929 and subsequent years, a different definition of affiliation, and limited the privilege of filing consolidated returns for those years to corporations with class A affiliation.

The "taxable year" here in question is by the definition of the statute, 1929. Section 48 of the Revenue Act of 1928 is as follows:

"§ 48. Definitions

"When used in this title—

"(a) Taxable year. 'Taxable year' means the calendar year, or the fiscal year ending during such calendar year, upon the basis of which the net income is computed under this Part. 'Taxable year' includes, in the case of a return made for a fractional part of a year under the provisions of this title or under regulations prescribed by the Commissioner with the approval of the Secretary, the period for which such return is made. The first taxable year, to be called the taxable year 1928, shall be the calendar year 1928 or any fiscal year ending during the calendar year 1928.

"(b) Fiscal year. 'Fiscal year' means an accounting period of twelve months ending on the last day of any month other than December." 45 Stat. 791, 807, 26 U. S.C.A. Int.Rev.Acts, page 366.

Plaintiff, conceding that the class B affiliation which it had with Record did not entitle it to file a consolidated return, including Record, for its full fiscal year extending into 1929, urges that it had the privilege, under section 105 of the Revenue Act of 1928, [1] of filing a return for its fiscal

---

[1] "§ 105. If it is necessary to compute the tax for a period beginning in one calendar year (hereinafter in this section called 'first calendar year') and

year ending January 31, 1929, which included Record as an affiliate as defined in section 141 (d), and then computing its tax proportionately, eleven-twelfths on the basis of the inclusion of Record, and one twelfth on the basis of its exclusion.

Defendant urges that section 105 is not applicable; that its scope is limited to the computation of taxes when an authorized return has been made; that by the definition of "taxable year" in section 48, and the withdrawal, by section 141, of the privilege of filing a consolidated return including a class B affiliate, for the "taxable year" 1929 and thereafter, Congress has determined the question adversely to plaintiff.

It should be noted that under Article 735 of Regulations 74 [2] (1929) there was extended to corporations affiliated on a class B basis the privilege of filing a consolidated return for 1928, which return could include the months of their fiscal year falling within 1928, in order that such corporations might have the advantage of the losses of any corporation within the group in that return. Since plaintiff's group of corporations, was, except for Record, a class A group, it did not fall within the permission of this regulation. Defendant argues that plaintiff could have taken advantage of the regulation by filing a return including only itself and Record, a class B affiliate, for the eleven months of 1928.

We think it doubtful whether, under the language of the regulation, plaintiff could have done so, but even if it could, it would have been obliged to forego the advantages of a consolidated return including its several other class A affiliates.

Plaintiff urges that it was the intent of Congress, when in May, 1928, it changed the law relating to consolidated returns of affiliated corporations, to give taxpayers until the end of the year 1928 to adjust themselves to the new law. It points to the recommendation of the Joint Committee on Internal Revenue Taxation, which is referred to in the Report of the Senate Finance Committee, 70th Congress, 1st session, S.Rept. 960, page 13. The recommendations of the Joint Committee were, in part, as follows:

"3. That affiliation be confined to so-called Class A affiliations by repealing Clause (2) of Section 240 (d) which provides that two or more domestic corporations shall be deemed to be affiliated if at least 95 per cent. of the stock of two or more corporations is owned by the same interests.

"4. That a reasonable interval of time be given affiliated corporations to adjust themselves to this change. It is suggested that these amendments should not take effect before January 1, 1929." (Report November 15, 1927, Vol. I, p. 14.)

ending in the following calendar year (hereinafter in this section called the 'second calendar year') and the law applicable to the second calendar year is different from the law applicable to the first calendar year, then the tax under this title for the period ending during the second calendar year shall be the sum of: (1) the same proportion of a tax for the entire period, determined under the law applicable to the first calendar year and at the rates for such year, which the portion of such period falling within the first calendar year is of the entire period; and (2) the same proportion of a tax for the entire period, determined under the law applicable to the second calendar year and at the rates for such year, which the portion of such period falling within the second calendar year is of the entire period." 45 Stat. 791, 815. 26 U.S.C.A. Int.Rev. Acts, page 375.

[2] In the case of a consolidated return of affiliated corporations, the consolidated net income must be computed on the basis of the taxable year (calendar year or fiscal year) of any one of the affiliated corporations, except, if the affiliated group of corporations has a parent corporation, the consolidated net income must be computed upon the basis of the taxable year of the parent corporation. However, if the corporations properly made a consolidated return for the taxable year 1927, the consolidated net income for the taxable year 1928 must be computed on the basis of the same taxable year upon which the 1927 return was made, unless permission to change is granted by the Commissioner. If pursuant to this article the taxable year of a group of corporations affiliated under the provisions of section 142(c) (2) would be a fiscal year beginning in 1928, a consolidated return for a fractional part of a year may be filed by such affiliated corporation for the period between the close of the previous fiscal year of the group and December 31, 1928. In such cases the period beginning January 1, 1929, shall be included in the return or returns for the taxable year 1929.

While the legislative intent is not clear, we think that, giving the taxpayer the benefit of the ambiguity, section 105 should be construed to permit plaintiff to compute its taxes as it seeks to do. The general purpose of Congress not to penalize a taxpayer using a period other than a calendar year as his tax period seems plain, and the substantial question in controversy here is whether plaintiff, because of the peculiar facts of its relation to the companies in its group, should be so penalized. We conclude that plaintiff is entitled to deduct Record's losses incurred in 1928, on the proportionate basis provided in section 105.

Plaintiff claims that the deductible losses of Record in 1928 were $174,710.98. Defendant concedes losses of $133,729.86. The $40,981.12 left in dispute represents the amount of certain debts which plaintiff claims were ascertained to be worthless and were charged off between February 1 and June 30, 1928. Prior to the sale which was made of the stock of Record on June 30, 1928, to outside interests by plaintiff and the estate of Rodman Wanamaker, accountants representing Record and the purchaser went through the accounts receivable on the books of Record and made a memorandum listing the names and ledger page numbers of accounts totaling $40,981.-12 which they listed as worthless, basing such determination on the consideration that some of the accounts had previously given trouble with respect to collections and that a change in ownership might adversely affect the collection of some of the accounts. The amount of the accounts thus shown as worthless was reflected in a balance sheet memorandum as of June 30, 1928. Section 23(j) of the Revenue Act of 1928 provided:

"In computing net income there shall be allowed as deductions: * * *

"(j) Bad Debts. Debts ascertained to be worthless and charged off within the taxable year (or, in the discretion of the Commissioner, a reasonable addition to a reserve for bad debts); and when satisfied that a debt is recoverable only in part, the Commissioner may allow such debt to be charged off in part." 45 Stat. 791, 800, 26 U.S.C.A. Int.Rev.Acts page 357.

We are not satisfied by plaintiff's meagre evidence relating to these debts that they were ascertained to be worthless during the period from February 1 to June 30, 1928, or that they were charged off during that period. We conclude therefore that the allowable deduction for Record's losses is $133,729.86.

Defendant claims several items of set-off. In plaintiff's 1929 return it claimed a deduction of $160,126.02 on account of "stocks liquidated." As to $87,700 of this amount, it represents the cost, as claimed by plaintiff, of 877 shares of preferred stock of the United Piano Company, most of which was acquired by it in 1922 as a part of the consideration paid by two persons named Shale and Williams, when they bought all of the stock and most of the assets of the Emerson Piano Company from the latter's stockholders, plaintiff being the majority stockholder of the Emerson Company. At the time plaintiff received this stock, it was, though not listed on any market, being bought and sold at $100 a share. Plaintiff, from May 11, 1922, to January 24, 1924, purchased some eighty additional shares at $100 each. Plaintiff, as we have said, claims a cost price of $100 a share for all of its United stock, making a total of $87,700. We think that price was satisfactorily proved. The stock admittedly became worthless in plaintiff's tax year 1929. Plaintiff was, therefore, entitled to that deduction.

The balance of plaintiff's deduction in its 1929 return of $160,126.02 for "stocks liquidated", viz., $72,426.02, was the difference between the cost to it of 6,701 shares of stock in the Emerson Piano Company, owned by it in 1922, which cost was $334,735.04, and the amount received by it as its share in stock and cash from the sale of the stock of that company, and most of its assets, to Shale and Williams, in 1922, and in cash from the liquidation of the remaining assets from 1922 to 1928.

Defendant contends that plaintiff was not entitled to this deduction of $72,426.02, its loss on the Emerson stock, because plaintiff in its consolidated income tax return for its fiscal year ended January 31, 1923, had been allowed an operating loss on account of the Emerson Company, an affiliate, of $216,844.96. Defendant claims that, under the doctrine of Ilfeld Co. v. Hernandez, 292 U.S. 62, 68, 54 S.Ct. 596, 78 L.Ed. 1127, plaintiff, having had the benefit of a loss on account of an affiliated company in a prior year, must subtract the amount of that loss from any loss suffered in a later year on account of the liquidation of its interest in that affiliate,

and can claim a deduction only for the excess, if any.

Plaintiff concedes that the rule of Ilfeld Co. v. Hernandez, supra, would prevent it from having the benefit of the loss claimed in 1929 "if the loss claimed in the return for 1929 was a loss on the liquidation of the Emerson Piano Company." Plaintiff revises its figures from those given in its 1929 return, and now asserts that its loss in 1929 was $70,264.31 instead of $72,426.-02, and that instead of its loss being the difference between the cost to it of the Emerson stock and the amount received in the liquidation of the Emerson assets, as was the theory of its 1929 return, its loss was the difference between the value of its proportionate share of the Emerson assets at the time they were turned over to it in 1922 as trustee for liquidation, and its share of the proceeds of that liquidation. Its claim seems to be that the liquidation of the Emerson company occurred in 1922, and that what it received then ceased to have any relation to Emerson, and became its own assets; that it was, therefore, entitled to deduct as a loss the difference between the fair value of those assets in 1922 and what it received for them when they were sold during the period from 1922 to 1929.

But the liquidation of the Emerson Company was not complete in 1922. What occurred in that year was that that Company assigned all of its remaining assets to plaintiff as trustee to pay the debts of Emerson from the proceeds of the disposition of those assets, and distribute the residue pro rata among the stockholders. The liquidation was not in fact completed until 1928. We think, therefore, that the theory on which plaintiff asserted its loss in its 1929 return was correct, and that its present theory is not tenable. However, the rule of Ilfeld Co. v. Hernandez, supra, does not permit the deduction and the defendant is entitled to a set-off of $72,426.02.

Plaintiff concedes that the defendant is entitled to its claimed set-off of $16,851.46 on account of deduction made by plaintiff for a discount given by the city of Philadelphia for taxes prepaid. The defendant concedes that plaintiff is entitled to a deduction of $13,639.79 for amortization of leaseholds for the year in question. The result is that plaintiff is entitled to deductions on its 1929 income-tax return of $133,729.86 and $13,639.79. Against these sums defendant is entitled to set-offs of $72,426.02 and $16,851.46. Plaintiff is, therefore, entitled to recover.

Entry of judgment will be deferred until the presentation of a stipulation by the parties, or if no such stipulation is presented, until the filing of a report by a commissioner of this court showing the amount due plaintiff in accordance with this opinion. It is so ordered.