### EDWARD KATZINGER CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 7854.

Circuit Court of Appeals, Seventh Circuit.

July 10, 1942.

Herbert A. Friedlich, Harry Thom, and Benjamin A. Ragir, all of Chicago, Ill. (Mayer, Meyer, Austrian & Platt of Chicago, Ill., of counsel), for petitioner.

J. P. Wenchel and John W. Smith, both of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, S. Dee Hanson, and Louise Foster, Sp. Assts. to Atty. Gen., for respondent.

Before SPARKS, MAJOR and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The taxpayer petitions for review of a decision of the Board of Tax Appeals denying it a deduction for a bad debt loss resulting from a series of advances to a wholly owned subsidiary. The denial was based on the theory that allowance for the loss in 1936, the year of liquidation of the subsidiary, would permit a double deduction for the taxpayer who, the Commissioner alleged, had previously availed itself of the same loss by means of a consolidated return filed by the two corporations for the year 1933.

Petitioner is a corporation engaged in the business of manufacturing metal stampings and kitchenware. In the year 1933, it decided to add a new line of goods, and organized a new corporation, Bruce-Hunt, Inc., to handle the sales of the new product. Pursuant to petitioner's regular policy with regard to its subsidiaries, the new corporation did not have any permanent assets, and petitioner invested $1,000 in its stock, paying that sum for all its authorized shares, which it held thereafter until liq-

uidation of the corporation. The $1,000 was inadequate to carry on the business of the sales corporation, and additional funds were provided by petitioner by means of cash advances which were treated by both corporations as open account loans. Repayments were made by Bruce-Hunt at various times during the period of its operations. The Board found the following facts as to this running account:

| Period | Advances | Repayments | Balance unpaid at end of period |
|---|---|---|---|
| 1933 | $ 83,197 | $52,742 | $30,454 |
| 1934 | 113,089 | 84,932 | 58,611 |
| 1935 | 79,735 | 68,858 | 69,489 |
| Jan. 1936 | 1,320 | 7,000 | 63,809 |

In January, 1936, Bruce-Hunt sold its inventory and accounts receivable to another subsidiary of petitioner for $33,504 in cash, which it thereupon turned over to petitioner with certain additional cash for a total of $34,859, constituting its only assets. Petitioner credited this on the open account, leaving an unpaid balance of $28,950, which petitioner ascertained to be worthless and charged off its books as a bad debt at the end of 1936. Bruce-Hunt was duly dissolved in February, 1936.

Petitioner's investment in Bruce-Hunt stock was recorded on its books by a debit of $1,000 to an account entitled, "Investment in Bruce-Hunt, Inc." This was written off by a credit of $1,000 in 1936. The evidence showed that all advances to Bruce-Hunt were considered as loans, and that there was never any intent to capitalize them.

Petitioner filed a consolidated income and excess profits tax return for the year 1933 for itself and its subsidiaries, including Bruce-Hunt which had suffered an operating loss for that year, and the Commissioner allowed a deduction of $28,429 on that account, the consolidated net income being $648,373. Thereafter, the 1934 Act eliminated the consolidated returns provision, and Bruce-Hunt filed separate returns, reporting net income of about $11,000 for the year 1934, a net loss of about $12,000 for 1935, and net income of $1,314 for 1936. Taxes for 1934 and 1936 were duly paid.

In its return for 1936, petitioner claimed the $28,950 unpaid balance on its advances as a bad debt deduction, and also deducted the $1,000 invested in Bruce-Hunt stock as

a loss. Both losses were disallowed on the ground that they represented capital contributions, and that amounts received by it in 1936 from Bruce-Hunt were not deductible under the provision of § 112(b) (6) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 112(b) (6): "No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation." The Commissioner recapitulated the account as follows:

| | |
|---|---|
| Amount paid for capital stock | $ 1,000.00 |
| Amounts contributed for working capital | 70,809.91 |
| Total | 71,809.91 |
| Received in liquidation | 41,859.85 |
| Balance | $29,950.06 |
| Reduction by reason of loss of Bruce-Hunt, Inc., availed of by you and your affiliated corporations in determining the consolidated income and excess-profits tax liability for the year 1933 | 28,429.84 |
| Maximum loss sustained | $ 1,520.72 |

The Board disagreed with the theory of the Commissioner that *no* loss could be recognized because the entire amount constituted capital contributions to its subsidiary. To the extent of the $1,000 which actually did represent capital investment, it confirmed the disallowance, and no question is raised as to the denial of that part of the deduction claimed.

As to the balance of the loss which the Board found represented advances in the nature of loans, it held that petitioner had sustained a loss of $28,950 from a debt which it ascertained to be worthless and charged off in 1936. However, it held that that loss was deductible only to the extent that it had not previously been deducted, and inasmuch as the taxpayer had used $28,429 of it to reduce income in 1933, that portion of the loss could not be used again, hence the Board allowed the deduction only in the amount of the balance, citing Regulations 78, articles 34, 35, 37, and 40 (c); Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127; Comm. v. Emerson Carey Fibre Products Co., 10 Cir., 70 F.2d 990; Greif Cooperage Corp. v. Comm., 3 Cir., 85 F.2d 365; and W. M. Ritter Lumber Co. v. Comm., 30 B.T.A. 231, 257, 282.

The question of double deductions was fully discussed and decided adversely to the taxpayer in the first case cited above, Ilfeld Co. v. Hernandez, supra. Petitioner seeks

to distinguish that case by showing that it involved advances during the consolidated return period, as to which there was no doubt but that the taxpayer could not have the double deduction for the same transaction. Here, however, it relies upon the well-recognized principle that in running accounts, in the absence of any intention on the part of the parties to do otherwise, payments made on the account are credited to the oldest indebtedness, extinguishing the items according to priority in time. Applying this rule, it contends that the 1933 indebtedness as to which the loss was taken, had been extinguished during the year 1934 when repayments were made on the running account, of $84,932. It therefore contends that the new advances, in subsequent years, constituted entirely new transactions, and that the ultimate loss of $28,950 arising from these new transactions was deductible without regard to the earlier transaction.

■ We cannot agree with petitioner's analysis of the facts or the law applicable thereto. It is fully established by the authorities relied upon by the Board that no deduction is to be allowed where the effect of such deduction is directly or indirectly to permit a taxpayer a double use of a subsidiary's losses for reduction of its income. It must be observed that here, the deduction in the year 1933 was for an *operating* loss, and not for a bad debt; and the taxpayer did not, before taking the deduction, charge off the amount of the loss from its books as a bad debt and start with a new account. Instead, it continued the open, running account on its books. There was never a time when the indebtedness was entirely extinguished, or even reduced below the amount owing at the close of the first year. And there was never any ascertainment that the running series of transactions would result in a loss, and if so, how much of a loss, until liquidation of the affairs of Bruce-Hunt in 1936. The net result of the entire running series of transactions was the loss of $28,950, but since petitioner had already had the benefit of $28,429 of this, it was entitled to only the balance over the previous deduction.

■ Petitioner had the burden of proving that the allowance of the deduction claimed would not amount to twice subtracting the same loss. McLaughlin v. Pacific Lumber Co., 293 U.S. 351, 55 S. Ct. 219, 79 L.Ed. 423. Far from establish-

ing that essential fact, we are convinced that all the evidence amply supports the finding of the Board that the bad debt loss is traceable directly to the 1933 operating loss, and that allowance of the deduction here claimed would result in a double deduction for the same loss.

Decision affirmed.