CANDY BROS. MFG. CO., Inc. v. COMMIS-SIONER OF INTERNAL REVENUE.

No. 14525.

United States Court of Appeals
Eighth Circuit.

July 30, 1952.

Robert R. Barrett, Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., on the brief), for petitioner.

Harry Marselli, Sp. Asst. to Atty. Gen. (Ellis N. Slack, Acting Asst. Atty. Gen., Lee A. Jackson and Louise Foster, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Before GARDNER, Chief Judge, and THOMAS and JOHNSEN, Circuit Judges.

GARDNER, Chief Judge.

This is a petition to review a decision of the Tax Court which affirmed a decision of the Commissioner of Internal Revenue holding that in computing net income as an element of corporation surtax net income for the years 1942 and 1943 no deductions should be allowed for net operating losses for the years 1940 and 1941.

Petitioner is a Missouri corporation and during the period here involved was engaged in manufacturing and selling cough drops, candy fruit drops and other hard

candies. Since December 17, 1940, it has been a wholly owned subsidiary of Universal Match Corporation. It has, throughout the period here involved, kept its books and filed its income tax returns on the accrual basis. The case involves deficiencies in excess profits taxes for the calendar years 1942 and 1943 in the respective amounts of $17,300.02 and $840.43.

For the years 1940 and 1941 it suffered net operating losses in the amounts of $8,222.24 and $45,734.23 respectively. For the year 1940, it filed a separate corporation income tax return and filed no excess profits tax return because it had no excess profits. In 1941 it likewise filed a separate corporation income tax return reporting its net operating loss. For the year 1941, the affiliate group of which it was a member filed a consolidated excess profits tax return in which the consolidated excess profits net income of the affiliated group was reduced by the full amount of its 1941 net operating losses. No deduction was taken in the 1941 consolidated return and none was allowed by the Commissioner for the carry-over of its 1940 net operating loss. No consolidated excess profits tax returns were filed by any affiliated group of which it was a member for any year after the calendar year 1941. It filed separate corporation income tax and excess profits tax returns for the calendar years 1942 and 1943 and on those returns it claimed no deductions for the carry-over of its 1940 and 1941 net operating losses but on September 24, 1948, it filed claim seeking deductions for the carry-over of its 1940 and 1941 net operating losses in computing the corporation surtax net income for 1942 and 1943 under Section 710(a) (1) (B) of the Internal Revenue Code, 26 U.S.C.A. § 710(a) (1) (B). The Commissioner disallowed these claims for carry-over losses on the ground, among others, that under Treasury Regulations 110 the 1940 net operating loss arose prior to a consolidated return period and as to the 1941 net operating loss the Commissioner held that since it had been availed of in the 1941 consolidated excess profits tax return, it could not be availed of in subsequent taxable periods in computing corporation surtax net income under

Section 710(a) (1) (B) of the Internal Revenue Code, 26 U.S.C.A. § 710(a) (1) (B).

Petitioner in seeking reversal urges: (1) that the Tax Court erred in holding Treasury Regulations 110 applicable to the question involved; (2) that the Tax Court erred in holding that the allowance of deduction for the carry-over of petitioner's net operating loss for 1941 in computing its corporation surtax net income under Section 710(a)(1)(B) would result in duplication of deductions.

It is important, we think, to bear in mind that the taxable years here involved are the years 1942 and 1943 and not the years 1940 and 1941, and it is likewise important to have in mind the character of tax assessed against petitioner. The question presented is whether in computing the net income as an element of corporation surtax net income for the years 1942 and 1943 petitioner was entitled to deductions for the net operating losses for the years 1940 and 1941. Section 710 (a)(1)(A) and (B) provides as follows:

"(a) Imposition.

"(1) General rule. There shall be levied, collected, and paid, for each taxable year, upon the adjusted excess-profits net income, as defined in subsection (b), of every corporation * * * a tax equal to whichever of the following amounts is the lesser:

"(A) 90 per centum of the adjusted excess profits net income, or

"(B) an amount which when added to the tax imposed for the taxable year under Chapter 1 * * * equals 80 per centum of the corporation surtax net income, computed under section 15 * * * but without regard to the credit provided in section 26(e) * * *."

This statute levies a tax upon the adjusted excess profits net income which is the excess profits net income after deducting certain credits allowed in Section 710. It is a separate tax from the income tax and is computed and paid under other provisions of the Internal Revenue Code. Sokol Bros. Furniture Co. v. Com-

missioner of Internal Revenue, 5 Cir., 185 F.2d 222. As has been observed, petitioner, a wholly owned subsidiary of Universal Match Corporation, joined with other affiliates in filing a consolidated excess profits tax return for 1941. Such a return was authorized by Section 730 of the Internal Revenue Code, 26 U.S.C.A. § 730, on condition, however "that all the corporations which have been members of the affiliated group at any time during the taxable year for which the return is made consent to all the regulations, and any amendments thereof duly prescribed prior to the last day prescribed by law for the filing of such return; and the making of a consolidated return shall be considered as such consent." This section of the statute authorized the Commissioner, with the approval of the Secretary of the Treasury, to promulgate "such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group, both during and after the period of affiliation, may be returned, determined, computed, assessed, collected, and adjusted, in such manner as clearly to reflect the excess profits tax liability and the various factors necessary for the determination of such liability, and in order to prevent avoidance of such tax liability." Petitioner, having joined in a filing of a consolidated return for excess profits taxes, consented to all regulations under Section 730, supra.

The regulations here applicable are found in Sections 33.1 and 33.31 of Treasury Regulations 110. The material portion of Section 33.31(d) provides that:

"* * * no net operating loss sustained during a consolidated return period of an affiliated group shall be used in computing the net income of a subsidiary * * * for any taxable year subsequent to the last consolidated return period of the group. No part of any net operating loss sustained by a corporation prior to a consolidated return period of an affiliated group of which such corporation becomes a subsidiary shall be used in computing the net income of such

corporation for any taxable year subsequent to the consolidated return period * * *."

Under these regulations petitioner in computing its net income for purposes of its adjusted excess profits net income for the period after consolidation was forbidden to deduct its net operating loss sustained during the period of consolidation or indeed to deduct anything in 1942 or 1943 for any operating loss sustained before the consolidated period. In joining in the consolidated tax return it agreed that it would accept all the regulations relative to net operating losses. Petitioner contends, however, that Regulations 110 could not have been intended to apply to Section 710(a)(1)(B) because promulgated before Section 710(a)(1)(B) was adopted. Responding to this contention the Tax Court, in referring to the effect to be given to these regulations, among other things said:

"Petitioner argues, in substance, that although (as required by section 730(a) of the Internal Revenue Code) participation in the filing of the consolidated returns for 1941 was consent to Regulations 110, such regulations were prior to the enactment on October 21, 1942, of section 710(a)(1)(B) as to limitation of excess profits tax by percentage of 'Corporation surtax net income' so that it did not by such consolidated return consent to disallowance of its 1940 and 1941 net operating losses in determination of corporation surtax net income under section 710(a)(1)(B). We cannot agree with such contention. The regulations, so consented to, not only cover both the period prior to the consolidation and the period of consolidation, as here involved, but also provide in general terms against use, after the consolidated period—and the taxable years here are after such period—of operating losses during or prior to the consolidated period in computing the net income of a subsidiary. Since the computation of 'Corporation surtax net income' involves the computation of net income, being net income minus a cred-

it, it becomes apparent that the regulations promulgated in 1941 are properly applicable to the statute and problem here involved."

We are in entire accord with this view and we think it is strengthened by the legislative history of the 1942 amendments and the subsequent practice of the Commissioner pusuant thereto. Section 710(a)(1)(B) was inserted in the 1942 Revenue Bill by Senate amendment. The report of the Committee on Finance accompanying the Revenue Bill of 1942, indicates, we think, that the Congress had in mind the applicability of Regulations 110 to situations such as are presented in the instant case. This report contains the following statement:

"The consolidated normal tax net income, the consolidated corporation surtax net income, and the consolidated capital gains and losses of the group are among those factors with respect to which the Commissioner, in view of experience with current and past consolidated returns regulations, is expected to prescribe regulations in order to reflect clearly the income and excess profits tax liability of the group and of each member thereof and the various factors necessary for the determination of such liability. In addition to these matters, your committee expects that such regulations will provide for the application of the excess profits relief provisions, and the provisions of Section 710(a)(1)(B) limiting excess profits taxes, in cases where consolidated returns are filed. Although the present regulations with respect to the determination of consolidated net income quite properly limit the deduction of the net operating loss carry-over of a member of a group from years prior to that in which its income is first included in a consolidated return to the amount of the separate income of such member, this section provides that such limitation shall not be applied to prevent the portion of the net operating loss carry-over which is attributable to a 1941 war loss of the member (see section 158 of the bill) being taken into account in computing consolidated net income."

This report indicates not only that Congress was cognizant of the then existing regulations but considered them applicable to cases arising under Section 710(a)(1)(B). We conclude that the Tax Court did not err in so holding.

The Tax Court found as a fact that,

"For the year 1941, Universal Match Corporation and its subsidiaries, including the petitioner, as an affiliated group of corporations, for the first time filed a consolidated excess profits tax return in accordance with the privilege granted by section 730 of the Internal Revenue Code. Petitioner's net operating loss for 1941 was deducted in said consolidated return and allowed by the Commissioner, and the consolidated excess profits net income of the affiliated group was thereby reduced by the full amount of said net operating loss."

The court expressed the view that to permit petitioner to deduct this 1940 carry-over loss would involve a duplication of deductions and regardless of the applicable regulations could not properly be allowed. Manifestly, if petitioner is allowed to deduct this 1941 operating loss in computing its corporation surtax net income for the taxable year involved it will be allowed such deduction twice. Such a holding would be violence to well established rules of tax law. Ilfeld Co. v. Hernandez, 292 U.S. 62, 54 S.Ct. 596, 78 L.Ed. 1127; McLaughlin v. Pacific Lbr. Co., 293 U.S. 351, 55 S.Ct. 219, 79 L.Ed. 423; United States v. Ludey, 274 U.S. 295; Edward Katzinger Co. v. Commissioner, 7 Cir., 129 F.2d 74; Eljer Co. v. Commissioner, 3 Cir., 134 F.2d 251.

We have given careful consideration to all other contentions urged by petitioner and find them without merit.

The decision of the Tax Court is therefore affirmed.