OPINION The sole issue for our consideration is whether certain advances to petitioner by its parent corporation and sole stockholder constituted debt or equity capital. If the advances were equity, the interest deductions claimed herein are not allowable. We see no need to attempt to match the facts in this case to the detailed and varied criteria utilized by the decided cases in determining whether an advance is debt or equity; in the final analysis, the issue is one of fact and the burden of proof is on petitioner. E.g., John Kelley Co. v. Commissioner, 326 U.S. 521, 530 (1946); Gooding Amusement Co. v. Commissioner, 236 F. 2d 159 (C.A. 6, 1956), affirming 23 T.C. 408 (1954) ; Cohen v. Commissioner, 148 F. 2d 336 (C.A. 2, 1945). Instead, we will simply outline the particular elements herein which lead us to conclude that the advances in question constituted bona fide indebtedness. We start from the premise that arrangements between a parent corporation and its wholly owned subsidiary “invite close scrutiny.” See Kraft Foods Co. v. Commissioner, 232 F. 2d 118, 123 (C.A. 2, 1956). At the same time, we think it unwarranted to apply legalistic and mechanical tests, in the area of parent-subsidiary relationships, without regard to the realities of the business world and the manner in which transactions are handled in the normal and ordinary course of doing business. See Byerlite Corporation v. Williams, 286 F. 2d 285, 294 (C.A. 6, 1960). The parent corporation was engaged in the wholesale grocery business. It organized petitioner to take over an existing nucleus of that business. Petitioner’s task was to consolidate and expand that nucleus rather than to venture into an unexplored market. The business risk was minimal. The parent, after careful consideration, estimated that petitioner would need $50,000 in capital to acquire fixed assets. As it turned out, this was short of the $90,000 which petitioner actually invested in such assets in the early months of its existence, but we are not impelled to penalize petitioner on this account alone, particularly since, by the first taxable year before us, tbe parent bad increased its capital investment in petitioner to $150,000. Tbe great bulk of the parent’s advances were for overrent assets, i.e., petitioner’s inventory requirements. Given the high turnover rate, tbe inventory was extremely liquid and reflected full market value. Except for a minor variation in petitioner’s first fiscal year, its current assets at all times exceeded tbe combined total of the parent’s advances and its liabilities to other parties. Under such circumstances, there is no doubt that the indebtedness to the parent could have been readily paid off in full at any time. That it was not so liquidated is simply the result of petitioner’s fast-growing sales operations which required a constantly increasing inventory. Both petitioner and the parent always considered the advances as indebtedness and their books and records clearly reflected this intention. The parent and the petitioner at all times expected the advances to be repaid and this expectation was clearly reasonable-under the circumstances. Respondent argues that lack of formal evidence of the indebtedness, absence of interest in the early years, lack of security, and the fact that 'an unrelated person would be unlikely to loan money on the same basis,[3] require a holding that the advances were in the nature of equity. We think that respondent’s assertions in this regard are misdirected in the context of this case. Under all the circumstances, we are not disposed to second guess the parties as to how the advances, by means of which the parent bankrolled the petitioner’s inventory, should be treated. On the basis of the entire record before us, we think respondent improperly characterized the advances as equity and that the interest deductions should have been allowed. Byerlite Corporation v. Williams, supra; Jach Daniel Distillery v. United States, 379 F. 2d 569 (Ct. Cl. 1967); Waterman Steamship Corporation v. United States, 203 F. Supp. 915 (S.D. Ala. 1962), reversed on other issues 330 F. 2d 128 (C.A. 5, 1964), affd. 381 U.S. 252 (1965); Edward Katzinger Co., 44 B.T.A. 533 (1941), affd. 129 F. 2d 74 (C.A. 7, 1942). To reflect the concessions of the parties on other issues, Decision will entered wnder Bule 50. Obviously, such a loan would have required the payment of interest. The executive vice president of the First National Bank of Memphis testified that the bank would have charged interest at one-half point above the prime rate. He also testified that the bank would have loaned the same amount either -on a revolving credit or 2-year term unsecured, unsubordinated basis, and would not have required a guarantee from the parent or the maintenance of cash accounts with the bank. He indicated that “perhaps” the bank would have asked the parent to execute a repurchase agreement on the inventory, but that such an agreement would not be too important because of the ready convertibility of petitioner’s inventory into cash. Such a repurchase agreement clearly would have been a meaningless and unnecessary requirement for the parent to have imposed.