**CITIES SERVICE OIL COMPANY, Successor By Merger To Columbian Fuel Company**

v.

**The UNITED STATES.**

No. 290-68.

United States Court of Claims.
July 14, 1972.

---

Robert J. Casey, New York City, attorney of record, for plaintiff. Thomas E. Tyre, John A. Craig, and Casey, Tyre, Wallace & Bannerman, New York City, of counsel.

David J. Gullen, with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant. Philip R. Miller and Joseph Kovner, Washington, D. C., of counsel.

Before COWEN, Chief Judge, LARAMORE, Senior Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA and KUNZIG, Judges.

## ON DEFENDANT'S AND PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT

COWEN, Chief Judge.

Plaintiff, successor by merger to Columbian Fuel Corporation, brought this suit for the refund of 1959 Federal income taxes in the amount of $170,819.84, or in the alternative amount of $107,341.65. During the taxable years 1949 through 1958, Columbian, herein referred to as the taxpayer, reported in its gross income the sum of $1,345,000, which it received from the sales of natural gas. The entire $1,345,000 was included in the taxpayer's gross income for Federal income tax purposes during those years, because it appeared that the taxpayer had an unrestricted right thereto. In determining its taxable income for each of the years 1949 through 1958 inclusive, the taxpayer properly claimed and was allowed a 27½ percent depletion deduction with respect to the $1,345,000—a deduction of $369,875. During its taxable year ended December 31, 1959, the taxpayer, under threats of litigation, refunded the entire $1,345,000 to Panhandle Eastern Pipe Line Company and Colorado Interstate Gas Company. The repayment represented a refund of excessive rate charges made by the taxpayer on the sale of natural gas during the calendar years 1949 through 1958.

After refunding the overcharges, the taxpayer deducted the $1,345,000 on its 1959 income tax return, and this produced a net operating loss of $980,792.48 for that year. The taxpayer then filed a timely "Application for Tentative Carryback Adjustment" with respect to the net operating loss for each of its taxable years 1956 and 1958. The applications were allowed, and the taxpayer received refunds. However, upon examination of the return for the year 1959 and the

carryback allowances, the Internal Revenue Service determined deficiencies which were assessed and paid on February 3, 1964. On April 3, 1964, the taxpayer filed a claim for refund for the overpayment of its income tax for 1959 in the amount of $688,945.91. The taxpayer claimed that the Internal Revenue Service had erred in failing to apply the provisions of Section 1341 of the Internal Revenue Code of 1954 * in determining the Federal income tax consequences of the taxpayer's repayment of the $1,345,000. The Service agreed and, in applying Section 1341, determined that the lesser tax for 1959 was produced by computations made pursuant to Section 1341(a) (5). Several steps were then taken by the Service in its final determination on plaintiff's claim for refund. In computing the tax for the reopened prior years, the Service excluded the amounts the taxpayer collected during these years and repaid in 1959. However, the exclusions were reduced by the amount of the depletion deductions the taxpayer had been allowed during each of the prior years. The net effect of these transactions was the disallowance of the taxpayer's claim for refund for 1959 in the amount now sued for. Statutory notice of the disallowance was received on September 28, 1966, and thereafter plaintiff timely filed its petition in this case. The only issue to be decided is whether in the recomputation of its tax liability for 1959 under Section 1341 of the Code, the taxpayer was entitled to exclude the entire amount it repaid to its customers, as plaintiff contends, or whether the amounts to be excluded from gross income should be reduced by the depletion deductions allowed to the taxpayer during each of the years in question, as the defendant contends.

I

The issue here presented was decided adversely to the taxpayer by the Supreme Court in United States v. Skelly Oil Co., 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969), reh. denied 395 U.S. 941, 89 S.Ct. 1992, 23 L.Ed.2d 458 (1969). The facts in that case are indistinguishable from those in the case at bar, except that there the parties stipulated that Section 1341(a) (5) did not apply and that the taxes should be computed under Section 1341(a) (4). In *Skelly*, the taxpayer, a natural gas producer, collected overcharges from its sales for a period of years, and these amounts were included in its gross income. There, as here, the taxpayer claimed in its tax returns for the prior years and was allowed a 27½ percent depletion deduction on the amounts of the overcharges that were later refunded to its customer. When the repayment was made in 1958, the taxpayer deducted the entire amount thereof on its 1958 tax return pursuant to Section 1341(a) (4), without any adjustment for the depletion deductions previously taken. The Supreme Court held that under Section 1341 of the Code, the deduction in the year of repayment must be reduced by the depletion allowance to the taxpayer in the year of receipt, since Congress did not intend to give taxpayers a deduction for refunding money that was not taxed when re-

---

* Section 1341 of the 1954 Code provides:

"(a) *General Rule.*—If—

"(1) an item was included in gross income for a prior taxable year (or years) because it appeared that the taxpayer had an unrestricted right to such item;

"(2) a deduction is allowable for the taxable year because it was established after the close of such prior taxable year (or years) that the taxpayer did not have an unrestricted right to such item or to a portion of such item; and

"(3) the amount of such deduction exceeds $3,000, then the tax imposed by this chapter for the taxable year shall be the lesser of the following:

"(4) the tax for the taxable year computed with such deduction; or

"(5) an amount equal to—

"(A) the tax for the taxable year computed without such deduction, minus

"(B) the decrease in tax under this chapter (or the corresponding provisions of prior revenue laws) for the prior taxable year (or years) which would result solely from the exclusion of such item (or portion thereof) from gross income for such prior taxable year (or years)."

ceived. For the reasons hereinafter stated, we have concluded that adherence to the decision in *Skelly* requires the same result in this case and that plaintiff is not entitled to recover.

## II

In an effort to avoid the effect of *Skelly*, plaintiff makes several contentions. The first is that the clear and unambiguous language of Section 1341(a) (5) provides "solely" for the exclusion of the amount repaid by the taxpayer in recomputing the tax for the prior year or years. Plaintiff says that the word "item" in subsection (a) (5) is identical to the item referred to in subsection (a) (1) which, in this case, is $1,345,000. The defendant counters with the legislative history of Section 1341 and the regulation promulgated pursuant thereto. Before the enactment of Section 1341, if an item was included in income in a prior year under a claim of right and was repaid in a subsequent year, the taxpayer was entitled only to have his tax computed for the year of repayment with a deduction for the repayment. As the Supreme Court pointed out, Section 1341 of the 1954 Code was enacted to alleviate some of the inequities which Congress felt existed. Thus, subsections (a) (4) and (a) (5) provide alternative methods for computing the tax consequences when a taxpayer repays an amount previously received under a claim of right.

The legislative history of Section 1341(a) (5) includes the following declaration of the Congressional intent:

In computing the tax reduction for the prior taxable year attributable to the removal of the item in question, if the earlier year would otherwise be closed, no other items may be adjusted. However, to the extent that adjusted gross income or taxable income may be changed, items such as the medical and charitable deductions which are dependent upon income may also be affected. [S.Rep.No.1622, 83d Cong., 2d Sess., p. 452 (3 U.S.Cong.

& Admin.News (1954) pp. 4621, 5095); see also H.Rep.No.1337, 83d Cong., 2d Sess., p. A294 (3 U.S.C. Cong. & Admin.News (1954) pp. 4017, 4437)].

Treas.Reg. § 1.1341–1(d) (4) (ii), which relates specifically to subsection (a) (5) provides:

(4) *Computation of amount of decrease in tax.*

\* \* \* \* \* \*

(ii) No item other than the exclusion of the income previously included under a claim of right shall be considered in computing the amount of decrease in tax if reconsideration of such other item is prevented by the operation of any provision of the internal revenue laws or any other rule of law. However, if the amounts of other items in the return are dependent upon the amount of adjusted gross income, taxable income, or net income (such as charitable contributions, foreign tax credit, *deductions for depletion* and net operating loss), appropriate adjustment shall be made as part of the computation of the decrease in tax. \* \* \* (Emphasis supplied.)

Defendant asserts that this regulation expresses the intention of Congress that Section 1341(a) (5) should be interpreted to compensate the taxpayer adequately for the tax paid in a prior year or years but to avoid giving him a windfall. There is no doubt that if the regulation is valid, it fully supports defendant's position. Although the Supreme Court in *Skelly* did not deal specifically with the above-quoted regulation, the Court did say that the "item" referred to in Section 1341(a) (1) is the item included in the gross income in the year of receipt. The Court's opinion then went on to state the following:

\* \* \* The section does not imply in any way that the "deduction" and the "item" must necessarily be equal in amount. In fact, the use of the words "a deduction" and the placement of § 1341 in subchapter Q—the subchapter dealing largely with side

effects of the annual accounting system—make it clear that it is necessary to refer to other portions of the Code to discover how much of a deduction is allowable. [394 U.S. 683, 89 S.Ct. 1382].

Plaintiff argues that the regulation is invalid in that its reference to "deductions for depletion" is not mentioned in the legislative history and is an administrative attempt to amend the statute. Plaintiff also says that the regulation is inconsistent with the Congressional intent in that the depletion deduction is dependent upon gross income from property, whereas Congress intended that the prior year adjustments should be restricted to those deductions which are dependent upon adjusted gross income, taxable income, or taxable net income. We need not explore in depth these arguments or those of the defendant as to the validity of the regulation. It is sufficient for our decision to conclude that the regulation is not inconsistent with the statement from *Skelly*, quoted above, or with the whole rationale of the Court's opinion in that case.

Secondly, plaintiff maintains that under the provisions of Section 613 of the Code and the applicable regulations, the depletion allowance is dependent on "gross income from property" and that subsection (a) (5) speaks of a decrease in tax resulting only from "gross income." It follows, plaintiff says, that an adjustment for the depletion deduction is not allowable under Section 1341(a) (5). It is quite clear that, in *Skelly,* the Supreme Court was cognizant of the fact that the amount repaid by the taxpayer there had been included in its "gross income from property" from which depletion deductions had been taken. The Supreme Court's opinion stated that the amounts refunded by the taxpayer had been included in its gross income for the years 1952 through 1957 and that "The amount was also included in respondent's 'gross income from the property' as defined in § 613 of the Internal Revenue Code of 1954 * * *." [394 U.S. 679, 89 S.Ct. 1381]. However,

the Supreme Court attached no significance to the distinction plaintiff now urges. As we shall show, the Court's holding rested on other and broader grounds, and we are not persuaded that we should hold for plaintiff on a point which the Supreme Court was aware of but to which it gave no weight.

Plaintiff's third principal argument is that the *Skelly* case is not determinative of the issue here because that case involved Section 1341(a) (4), whereas the claim here is under Section 1341(a) (5). We do not agree. Our reading of *Skelly* leads to the conclusion that the Supreme Court would have reached the same result if Section 1341(a) (5) had applied in that case. In discussing the reasons for the enactment of Section 1341, the Court stated:

> * * * As an alternative to the deduction in the year of repayment which prior law allowed, § 1341(a) (5) permits certain taxpayers to recompute their taxes for the year of receipt. Whenever § 1341(a) (5) applies, taxes for the current year are to be reduced by the amount taxes were increased in the year or years of receipt because the disputed items were included in gross income. [Footnote omitted] [394 U.S. 682, 89 S.Ct. 1382].

While the statement quoted above may be labeled as dictum, it is our opinion that the whole thrust of the decision in *Skelly* is contrary to each of the contentions made by plaintiff. The dominant and overriding basis of the Supreme Court's holding, with particular reference to the disputed adjustment for the depletion allowance involved in this case, is set forth in the following portions of the *majority opinion:*

> * * * In either case, the Code should not be interpreted to allow respondent "the practical equivalent of double deduction," Charles Ilfeld Co. v. Hernandez, 292 U.S. 62, 68, 54 S.Ct. 596, 598, 78 L.Ed. 1127 (1934), absent a clear declaration of intent by Congress. See United States v. Ludey,

274 U.S. 295, 47 S Ct. 608, 71 L.Ed. 1054 (1927). Accordingly, to avoid that result in this case, the deduction allowable in the year of repayment must be reduced by the percentage depletion allowance which respondent claimed and the Commissioner allowed in the years of receipt as a result of the inclusion of the later-refunded items in respondent's "gross income from the property" in those years. Any other approach would allow respondent a total of $1.27½ in deductions for every $1 refunded to its customers. [394 U.S. 684, 89 S.Ct. 1383].

\*    \*    \*    \*    \*    \*

\* \* \* In essence, oil and gas producers are taxed on only 72½% of their "gross income from the property" whenever they claim percentage depletion. The remainder of their oil and gas receipts is in reality tax exempt. We cannot believe that Congress intended to give taxpayers a deduction for refunding money that was not taxed when received. Cf. O'Meara v. Commissioner, 8 T.C. 622, 634–635 (1947). Accordingly, *Arrowsmith* [Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6] teaches that the full amount of the repayment cannot, in the circumstances of this case, be allowed as a deduction.

This result does no violence to the annual accounting system. Here, as in *Arrowsmith,* the earlier returns are not being reopened. And no attempt is being made to require the tax savings from the deduction to equal the tax consequences of the receipts in prior years. In addition, the approach here adopted will affect only a few cases. The percentage depletion allowance is quite unusual; unlike most other deductions provided by the Code, it allows a fixed portion of gross income to go untaxed. As a result, the depletion allowance increases in years when disputed amounts are received under claim of right; there is no corresponding decrease in the allowance because of later deductions for repayments. Therefore, if a deduction for 100% of the repayments were allowed, every time money is received and later repaid the taxpayer would make a profit equivalent to the taxes on 27½% of the amount refunded. In other situations when the taxes on a receipt do not equal the tax benefits of a repayment, either the taxpayer or the Government may, depending on circumstances, be the beneficiary. Here, the taxpayer always wins and the Government always loses. We cannot believe that Congress would have intended such an inequitable result. [Footnotes omitted] [394 U.S. 685–686, 89 S.Ct. 1383–1384].

### III

Alternatively, plaintiff claims entitlement to a refund of $107,341.65. This ground for recovery is based on Section 1341(a) (4). Plaintiff acknowledges that the taxpayer's claim in *Skelly* was also based on Section 1341(a) (4), and there is no doubt that a decision for plaintiff on this alternative ground would be in direct conflict with the decision of the Supreme Court.

### IV

For the reasons stated, defendant's motion for summary judgment is granted, plaintiff's cross-motion for summary judgment is denied, and the petition is dismissed.